UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                      CIVIL ACTION

VERSUS                                                        16-119-SDD-EWD

TWO HUNDRED TWEINTY-
THREE THOUSAND, NINE
HUNDRED SIXTY DOLLARS
IN UNITED STATES CURRENCY

### RULING

This matter is before the Court on the *Motion to Strike Claim and Answer of Mr. Hieu Minh Le*[1] and *Motion to Substitute Motion to Strike Claim and Answer of Mr. Hieu Minh Le*[2] filed by the United States of America ("United States"). Claimant Hieu Minh Le ("Claimant") has filed an *Opposition*,[3] to which the United States filed a *Reply*,[4] and to which Claimant filed a *Sur-Reply*.[5]

**I.    FACTUAL BACKGROUND**[6]

On October 5, 2015, DEA agents conducted a traffic stop of a 2012 Nissan Juke travelling westbound on 1-10 in Port Allen, Louisiana for following too closely. While speaking with the driver, Keith Tau ("Tau"), officers became suspicious that Tau was involved in some type of criminal activity because Tau was exhibiting unusual behavior, deception, and visual observations, and based on the inconsistencies of the itinerary of

---

[1] Rec. Doc. 8.
[2] Rec. Doc. 9.
[3] Rec. Doc. 12.
[4] Rec. Doc. 15.
[5] Rec. Doc. 18.
[6] The Court adopts the Factual Background from Rec. Docs. 8-4, 9-3 and 12.
35839

the trip between the driver and the passenger - Tau claimed that he was making a turn-around trip - and passenger Nhan Nghia Dang ("Dang") stated that they were on a one day trip to New Orleans to attend a party. Agents were also suspicious when they visually observed from the passenger side window what appeared to be an aftermarket constructed compartment on the floor of the vehicle. Agents suspected the hidden compartment because the exact same concealment in the exact same type of vehicle was found several months prior and, from which, Agents seized 15.6 pounds of cocaine.

Agents requested, but were denied, consent to search the vehicle by Dang, the registered owner of the vehicle. Officer Green and his certified narcotics detection K-9 dog sniffed the exterior of the car, and the K-9 gave a positive alert on the passenger side underneath the rocker panel area. DEA agents then proceeded to search the vehicle and discovered a constructed aftermarket compartment located in the floor of the vehicle accessible under the driver and passenger front seats of the vehicle capable to be accessed by removal of the rear seat bolts. Located within the compartments were 4 bundles of shrink-wrapped U.S. Currency. The United States argues that the denominations, predominantly $20 bills banded in increments, are consistent with how profits from drug trafficking are typically packaged. The United States further avers that the manner of concealment is consistent with that of high level south west border drug trafficking organizations.

The K-9 was allowed to sniff the currency post-seizure and alerted positively to a narcotics odor on the currency. Tau and Dang were given their *Miranda* rights and asked about the shrink-wrapped currency. Both Tau and Dang disclaimed knowledge and ownership of the currency, and both signed a DEA Disclaimer in reference to the currency.

35839

The United States argues that the currency seized from the car owned by Dang and driven by Tau are drug proceeds or funds used or intended to be used to facilitate a drug offense and are, thus, forfeitable pursuant to 21 U.S.C. § 881(a)(6).

Claimant asserts that he is the owner of several business in the United States and Vietnam. According to Claimant, Tau is his business partner and the currency seized from the car belonged to Tau for the sole purpose of acquiring electronics for his business. Claimant's basis for this claim is the promissory note executed under California law.[7]

Claimant further argues that there was nothing connecting the cash to any kind of illicit activities. According to a news source cited by Claimant, the fact that there were traces of drug residue on the money is not evidence that the funds were used in drug activity.

Lastly, Claimant avers that he has a claim to the seized funds because they were used in business by the parties, not because he is a general creditor.

## II.   PROCEDURAL BACKGROUND[8]

On February 24, 2016, the United States issued a *Complaint for Forfeiture in Rem against Two Hundred Twenty-Three Thousand, Nine Hundred Sixty Dollars in United States Currency.*[9] On February 26, 2016, a *Warrant of Arrest in Rem*[10] was issued. Claimant filed an *Answer to the Complaint*[11] on March 17, 2016. The following day, on

---

[7] The Court notes that this Promissory Note, Rec. Doc. 5-1, was executed on November 20, 2015, but the stop and seizure of currency occurred on October 5, 2015.
[8] The Court adopts the Procedural Background from Rec. Docs. 1,4,5,6,8,9,12,15,18.
[9] Rec. Doc. 1.
[10] Rec. Doc. 4.
[11] Rec. Doc. 5.
35839

March 18, 2016, Claimant filed his *Opposition*[12] to the forfeiture.  The Court now turns to the United States' pending *Motion to Strike*.[13]

### III.   LAW AND ANALYSIS

The United States moves to strike the *Claim* and *Answer* of Claimant on the grounds that Claimant lacks standing under Article III of the United States Constitution and 18 U.S.C. § 983(d)(6)(B), and Claimant fails to support his claim of ownership under 18 U.S.C. § 983(d)(1).[14]  In order for Claimant to establish a claim over the seized funds, he must establish both Statutory standing under Federal Rule of Civil Procedure ("FRCP") Rule G(8) and standing under Article III of the United States Constitution.[15]  Both the Government and the Claimant agree that Claimant has satisfied the statutory requirements set forth in FRCP G(8).[16]  Therefore, the only legal issue before the Court is whether the Claimant has satisfied Article III standing under the United States Constitution.

#### A.   Article III Standing

The Fifth Circuit Court of Appeals in *Kadonsky v. U.S.* outlined the requirements that a claimant must establish to satisfy Article III standing in a forfeiture case:

> [T]he burden of establishing standing to contest forfeiture is on the claimant seeking to come before the court.  A claimant need not prove the merit of his underlying claim.  He must, however, be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and the prudential considerations defining and limiting the role of the court.[17]

---

[12] Rec. Doc. 6.
[13] Rec. Doc. 8.
[14] Rec. Doc. 8-4.
[15] *U.S. v. Funds in the Amount of $239,400*, 795 F.3d 639 (7th Cir. 2015).
[16] Rec Docs. 8-4 and 12.
[17] *Kadonsky v. U.S.*, 216 F.3d 499, 508 (5th Cir. 2000) quoting *United States v. $9,041,598.68*, 163 F.3d 238, 245 (5th Cir. 1998)(citations and internal quotations omitted).
35839

The *Kadonsky* court further clarified that, "while any person with a recognizable legal or equitable interest in property may have standing to challenge its forfeiture, the claimant must come forth with some evidence of his ownership interest to establish standing to contest a forfeiture."[18] Additionally, 18 U.S.C. § 983(d)(6)(B)(i), the Civil Forfeiture Statute, states that "a person who with only a general unsecured interest in, or claim against, the property or estate of another" is not an owner.[19] Accordingly, in order to survive the United States' motion to strike, Claimant must provide some evidence that he has an ownership interest to contest the forfeiture.

### B.    Claimant's Unsecured Creditor Claim

Claimant argues that he is the owner of the seized funds. In his *Answer*, Claimant "asserts that the money seized was actually loan money received by the Borrower and driver of the vehicle, [Tau], from [Claimant]."[20] In support of this assertion, Claimant attached a California All-Purpose Certificate of Acknowledgment dated on November 20, 2015 and a Promissory Note executed on August 30, 2015.[21]

The Promissory Note establishes that the "Note will be construed in accordance and governed by the laws of the State of California."[22] Accordingly, the Court must examine the California Commercial Code to determine if the Promissory Note in question created a valid ownership interest. The California Commercial Code defines a promissory note as "an instrument that evidences a promise to pay a monetary obligation, does not

---

[18] *Id.* (internal citations omitted).
[19] 18 U.S.C. § 983(d)(6)(B)(i).
[20] Rec. Doc. 5.
[21] *See* Rec. Doc. 5-1 and Rec.Doc. 5-2.
[22] Rec. Doc. 5-1.
35839

evidence an order to pay, and does not contain an acknowledgment by a bank that the bank has received for deposit a sum of money or funds."[23] Per this definition, Claimant's Promissory Note satisfies the definition of a promissory note under California law. However, under California law, the execution of a valid promissory note creates a "security interest" - not an ownership interest.[24] Given that Claimant had a security interest, not an ownership interest, in the seized funds, Claimant has clearly failed to demonstrate "some ownership interest" under *Kadonsky* or 18 U.S.C. § 983(d)(6)(B)(i).[25]

Accordingly, the Court finds that Claimant lacks Article III standing in the present case as an unsecured creditor.

### C. Claimant's Business Funds Claim

In his *Surrpely Memorandum in Opposition to Defendant's Motion to Strike Claim and Answer of Mr. Hieu Minh Le*, Claimant argues that "he is not a general creditor and has a claim to the funds as these were used by the parties in business."[26] Claimant's mere statement that he and Tau were members of a partnership is not sufficient for the Court to conclude that a partnership existed; once again, the Court must turn to California law to determine if there is a legally cognizable business relationship between Tau and Claimant.

Claimant submitted no evidence that he and Tau were members of a legally registered partnership but, under California business law, filing is optional for general

---

[23] Cal. Com. Code § 9102 (65) (West 2014).
[24] Cal. Com. Code § 9301 (West 2007). The Court also notes that, while Claimant's security interest in the seized funds attached when the promissory note was executed, Claimant provided no evidence of the financing statement filing per Cal. Com. Code §§ 9309 (West 2004) and 9310 (West 2007) which is required for Claimants interest in the funds to be perfected as to third persons, like the United States.
[25] 216 F.3d 499, 508 (5th Cir. 2000) quoting *United States v. $9,041,598.68*, 163 F.3d 238, 245 (5th Cir. 1998)(citations and internal quotations omitted).
[26] Rec. Doc. 18. (internal citations omitted).
35839

partnerships.[27]  The relevant provision of the California Corporations Code states that "the association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intended to form a partnership."[28]  There is nothing in the record to suggest that Tau would be sharing in the profits of Claimant's business – Claimant's filing only states that Tau was to use the cash to purchase items for the business.

Further, even if Tau received payment in exchange for finding and purchasing electronics that alone would not establish a partnership under California law.  California Corporations Code § 16202(3)(B) states that "a person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received…in payment for series as an independent contractor or of wages or other compensation to an employee."[29]  Based upon the Promissory Note provided by Claimant, it is clear that Tau received the funds not as a share of profits, because Claimant executed a promissory note, but as a loan from Claimant.

Claimant's business funds argument further loses traction given that California law does not recognize Claimant's argument.  California Corporations Code § 16501 provides that "a partner is not a co-owner of partnership property and has no interest in partnership property that can be transferred, either voluntarily or involuntarily."[30]  California business law clearly states that Claimant's business funds contention is legally implausible; if the seized funds were truly funds from a business partnership, then Claimant would not have

---

[27] Cal. Corp. Code § 15904.01 (West 2008).
[28] *Id.* at § 16202.
[29] *Id.* at § 16202(3)(B).
[30] *Id.* at § 16501.
35839

been able to execute a valid promissory note because Claimant, as a partner in a general partnership, would not have had any interest in the partnership property that could have been transferred to Tau.

Accordingly, the Court finds that Claimant's business funds claim is unsupported by California law and is, therefore, insufficient to establish Article III standing.

### D.   Remaining Legal Claims

Claimant also argues that there was no probable cause to search the vehicle; thus, the funds were improperly seized because of a lack of "nexus between the money seized and any violations of the law."[31]  Given the Court's finding that Claimant lacks standing to bring the forfeiture claim, the Court may not examine Claimant's claims on the merits of the forfeiture as he lacks legal standing to make these claims.[32]

## IV.   CONCLUSION

For the foregoing reasons, the United States' *Motion to Substitute Motion to Strike Claim and Answer of Mr. Hieu Minh Le*[33] is GRANTED and Mr. Hieu Minh Le's *Claims* and *Answers*[34] are stricken from the record of these proceedings.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on November 17, 2016.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[31] Rec. Doc. 21.
[32] *See United States v. One 18th Century Columbian Monstrance*, 797 F.2d 1370 (5th Cir. 1986).
[33] Rec. Doc. 8.
[34] Rec. Doc. 6.
35839